**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UBS AG, *et al.*,<br><br>　　　　　　Defendants. | ) No. 09 Civ. 893 (RJS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, on behalf of itself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UBS AG, *et al.*,<br><br>　　　　　　Defendants. | ) No. 09 Civ. 2191 (RJS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MOTION OF BRICKLAYERS AND MASONS' LOCAL UNION NO. 5 OHIO HEALTH AND WELFARE FUND, POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT AND WEST PALM BEACH FIREFIGHTERS' PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF <u>SCOTT + SCOTT LLP AS LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ........................................................................................................................... 3

    I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR
         ALL PURPOSES ................................................................................................ 3

    II.   MOVANTS SATISFY THE "LEAD PLAINTIFF"
         REQUIREMENTS OF THE EXCHANGE ACT AND
         SHOULD BE APPOINTED LEAD PLAINTIFF ............................................... 5

         A.    Movants Have Timely Moved for Appointment as Lead Plaintiff ............................. 6

         B.    Movants Have the Requisite Financial Interest in the Relief
              Sought by the Class ........................................................................................ 6

         C.    Movants Otherwise Satisfy the Requirements of Rule 23 ........................................ 7

    III.  MOVANTS' SELECTION OF SCOTT + SCOTT AS
         COUNSEL FOR THE CLASS SHOULD BE APPROVED ......................................... 9

CONCLUSION ....................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Becher v. Long Island Lighting Co.*,
   164 F.R.D. 144 (E.D.N.Y. 1996) ..................................................................................................8

*Constance Sczesny Trust v. KPMG LLP,*
   223 F.R.D. 319 (S.D.N.Y. 2004) ..................................................................................................6

*Devlin v. Transp. Commc'ns Int'l Union,*
   175 F.3d 121 (2d Cir. 1999)..........................................................................................................3

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ....................................................................................................8

*In Re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ..................................................................................................7

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ..................................................................................................7

*In re Olsten Corp. Secs. Litig.*,
   3 F.Supp.2d 286 (E.D.N.Y. 1998) ............................................................................................7, 8

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y 1995) ...................................................................................................8

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990).......................................................................................................3

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ....................................................................................................7

*Lax v. First Merchants Acceptance Corp.*
   No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug.11, 1997).....................................................7

*Off v. Ross*,
   Civil Action No. 3468, 2008 WL 5053448 (Del. Ch. Nov. 26, 2008)........................................10

*Pinkowitz v. Elan Corp., PLC*
   No. 02 Civ. 865, 2002 WL 1822118 (S.D.N.Y. July 29, 2002) ...................................................4

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................................................4

*Seidel v. Noah Educ. Holdings Ltd.*
   No. 08 Civ. 9203, 2009 WL 700782 (S.D.N.Y. Mar. 9, 2009). ............................................7, 9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(1) and (a)(3)(B)............................................................................................................5
   §78u-4(a)(3)(B)(iii) .....................................................................................................................6
   §78u-4(a)(3)(B)(iii)(bb) ...............................................................................................................7
   §78u-4(a)(3)(A)(i).........................................................................................................................5
   §78u-4(a)(3)(A) and (B) ............................................................................................................5, 6
   §78u-4(a)(3)(B)............................................................................................................. *passim*
   §78u-4(a)(3)(B)(ii).....................................................................................................................1, 3
   §78u-4(a)(3)(B)(iii) ...................................................................................................................1, 2
   §78u-4(a)(3)(B)(v) ....................................................................................................................2, 9
   §78j(b).......................................................................................................................................1, 4
   §78t(a).......................................................................................................................................1, 4

17 C.F.R.
   §240.10b-5 ...................................................................................................................................1

Federal Rules of Civil Procedure
   Rule 23 .............................................................................................................................. *passim*
   Rule 23(a)..................................................................................................................................7, 8
   Rule 23(a)(3)................................................................................................................................8
   Rule 23(a)(4)................................................................................................................................8
   Rule 42(a)...........................................................................................................................1, 2, 3

## INTRODUCTION

Class members Bricklayers and Masons' Local Union No. 5 Ohio Health and Welfare Fund, Police & Fire Retirement System of the City of Detroit and West Palm Beach Firefighters' Pension Fund (the "UBS AG Institutional Investor Group" or "Movants") respectfully submit this memorandum of law in support of their motion for an order: (1) consolidating the above-captioned related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2) appointing the UBS AG Institutional Investor Group as Lead Plaintiff pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; (3) approving Lead Plaintiff's selection of Scott + Scott, LLP ("Scott + Scott") as counsel for the Class; and (4) granting such other relief as the Court may deem just and proper.

The above-captioned proposed class actions (the "Actions") are brought against UBS AG ("UBS" or the "Company"), and certain UBS officers and directors (collectively "Defendants") on behalf of all purchasers of UBS securities between May 4, 2004 and January 26, 2009, inclusive (the "Class Period"), and were damaged thereby. The Actions are brought pursuant to §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). These Actions charge that UBS and certain of its officers and directors made materially false and misleading statements and omissions to investors regarding, among other things, the legality of the Company's U.S. wealth management business (referred to hereinafter collectively as the "Tax Shelter Actions").

The PSLRA requires that, prior to selecting a lead plaintiff, a court must decide whether to consolidate the actions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). As soon as practicable after its decision on consolidation, the court is to appoint as lead plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

Here, the Tax Shelter Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). Moreover, the UBS AG Institutional Investor Group should be appointed Lead Plaintiff because: (a) this motion is timely filed; (b) to the best of its knowledge, the UBS AG Institutional Investor Group has the largest financial interest in this litigation; and (c) The UBS AG Institutional Investor Group will adequately represent the interests of the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the UBS AG Institutional Investor Group's selection of Scott + Scott to serve as Lead Counsel should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## FACTUAL BACKGROUND

The complaints filed in the Tax Shelter Actions are brought on behalf of purchasers of the publicly traded securities of UBS between May 4, 2004 and January 26, 2009, inclusive (the "Class Period"), including those class members who obtained the purchasing rights and/or common securities pursuant and/or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with the Rights Offering approved at UBS Annual General Meeting on April 23, 2008, seeking remedies pursuant to §§11 and 12 the Securities Act of 1933 and §§10(b) and 20(a) of the Exchange Act.[1]

Prior to and during the Class Period, UBS was a global provider of financial products and services. The allegations in the Tax Shelter Actions center on activities within UBS Global Wealth Management & Business Banking Group's Wealth Management US segment. The complaints charge that UBS violated the securities laws by failing to disclose that UBS's strategy to attract "Net New Money" from U.S. customers, which UBS presented as a primary financial performance indicator, primarily involved assisting wealthy U.S. citizens avoid paying federal taxes by hiding billions of dollars of their funds in undeclared Swiss bank accounts, in direct violation of Internal Revenue Service ("IRS") regulations. According to a July 2008 report by

---

[1] The complaint captioned *Police and Fire Retirement System of the City of Detroit v. UBS AG, et al.*, No. 09 Civ. 2191 (RJS) (the "*Detroit Police and Fire* Complaint"), is the only Tax Shelter Action that includes a claim under the Securities Act of 1933. The complaint captioned *New Orleans Employees' Retirement System v. UBS AG, et al.*, No. 09 Civ. 893 (RJS) does not include this claim.

the Senate Permanent Subcommittee on Investigations, UBS assisted U.S. clients in hiding at least $17.9 billion in offshore accounts. At the same time as it was engaging in this illegal activity, UBS touted its integrity, risk management and internal controls to investors.

The Tax Shelter Actions also charge that UBS bankers improperly sold securities in the United States without a license, in violation of SEC regulations, and have actively conspired to subvert IRS Qualified Intermediary reporting obligations. As a result of these activities, UBS, among other things, has been faced with a $780 million deferred prosecution agreement with the Justice Department. As UBS AG began disclosing the true nature of its Wealth Management business during the government probe, UBS shares plummeted, resulting in substantial losses to UBS shareholders. Both complaints name UBS and eight current or former officers and/or directors as defendants, including Marcel Ospel, Marcel Rohner, Peter Wuffli, Peter Kurer, Raoul Weil, Martin Liechti, Mark Branson and Philip Lofts as defendants.[2]

## ARGUMENT

### I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that "if more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.* Consolidation is appropriate when there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 130 (2d Cir. 1999); *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990). Here, the above-captioned Tax Shelter Actions presently pending in this District against UBS assert both class claims on behalf of the

---

[2]    The *Detroit Police and Fire* Complaint also names Marco Suter, Stephan Haeringer, Ernesto Bertarelli, Gabrielle Kaufmann-Kohler, Sergio Marchionne, Rolf A. Meyer, Helmut Panke, Peter Spuhler, Peter R. Voser, Lawrence A. Weinbach, and Joerg Wolle as defendants. All are signatories of the Registration Statement and Prospectus issued in connection with the Rights Offering approved at the UBS Annual General Meeting on April 23, 2008 and would be liable under Section 11 as signatories to the Registration Statement.

purchasers and acquirers of UBS securities for alleged violations of the Exchange Act during the Class Period. *See Police and Fire Retirement System of the City of Detroit v. UBS AG, et al.*, No. 09 Civ. 2191 (RJS), Dkt. No. 1 (the "*Detroit Police and Fire* Complaint"); *New Orleans Employees' Retirement System v. UBS AG, et al.*, No. 09 Civ. 893 (RJS), Dkt. No. 1 (the "*New Orleans Employees'* Complaint"). Both of the actions name the Company and certain Company officers and directors as Defendants and all actions involve the same factual and legal issues, namely, whether Plaintiffs purchased or acquired UBS securities at artificially inflated prices as a result of Defendants' alleged false and misleading statements during the Class Period. *Id.* Additionally, the Tax Shelter Actions present the common question of whether Defendants' conduct violates §§10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. *Id.* The test for consolidation is met here by virtue of these common questions.

The *Detroit Police and Fire* Complaint includes a claim under the Securities Act of 1933, which the other complaint, the *New Orleans Employees'* Complaint, does not. This does not factor against consolidation. *See Pinkowitz v. Elan Corp., PLC*, No. 02 Civ. 865, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) ("since all but one of the class actions overlap in that they include claims under Sections 10(b) and 20(a) of 1934 Act as well as under Rule 10b-5, the mere presence of additional claims under the 1933 Act does not weigh against consolidation"). Also, the fact that the *Detroit Police and Fire* Complaint names several additional defendants that are not named in the *New Orleans Employees'* Complaint does not bear against consolidation. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (citing *Pinkowitz*, 2002 WL 1822118, at *3 ("'[A]lthough certain class actions here name defendants not otherwise present in the other class actions,' consolidation is not barred simply because the actions to be consolidated allege claims

against different parties'").[3]   For these reasons, the above-captioned actions should be consolidated.

## II. MOVANTS SATISFY THE "LEAD PLAINTIFF" REQUIREMENTS OF THE EXCHANGE ACT AND SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA establishes a procedure that governs the appointment of lead plaintiffs in securities class actions brought under the Exchange Act pursuant to the Federal Rules of Civil Procedure, Rule 23. *See* 15 U.S.C. §78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §§78u-4(a)(3)(A)(i). Here, the relevant notice for the Tax Shelter Actions was published via *Globe Newswire* in *The Wall Street Journal* on January 30, 2009. *See* Declaration of Joseph P. Guglielmo filed concurrently herewith ("Guglielmo Decl."), Exhibit A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice. . .

---

[3]   Unless otherwise noted, citations are omitted.

>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii); *see also, e.g., Constance Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 323 (S.D.N.Y. 2004).

### A. Movants Have Timely Moved for Appointment as Lead Plaintiff

All Class members who are interested in moving for appointment as lead plaintiff in the Tax Shelter Actions must have done so by March 31, 2009, pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on January 30, 2009). 15 U.S.C. §78u-4(a)(3)(A) and (B). In this instance, the UBS AG Institutional Investor Group hereby moves this Court in a timely manner to be appointed Lead Plaintiff on behalf of all members of the Class.

Moreover, each member of the UBS AG Institutional Investor Group has duly signed and filed a certification stating they have reviewed the allegations of a complaint and are willing to serve as a representative party on behalf of the Class. *See* Guglielmo Decl., Ex. B. In addition, the UBS AG Institutional Investor Group has selected and retained competent counsel to represent it and the Class. See Guglielmo Decl., Ex. D. Accordingly, the UBS AG Institutional Investor Group satisfies the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and the Court should approve its application for appointment as Lead Plaintiff and its selection of Scott + Scott as Lead Counsel for the Class.

### B. Movants Have the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by the certifications signed by or on behalf of each of the UBS AG Institutional Investor Group movants, the UBS AG Institutional Investor Group, as a whole, has suffered losses of approximately $4,917,505 in connection with its Class Period activity in UBS securities. *See* Guglielmo Decl., Exs. B and C. While the PSLRA does not set forth a specific method for determining the "largest financial interest," courts within the Second

Circuit have adopted the Northern District of Illinois' four-part *Lax* test, weighing "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Seidel v. Noah Educ. Holdings Ltd.*, No. 08 Civ. 9203, 2009 WL 700782, at *2 (S.D.N.Y. Mar. 9, 2009); *In re Olsten Corp. Secs. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug.11, 1997). Courts of this Circuit have placed the most weight on the last factor, the magnitude of the loss. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007). To the best of its knowledge, the UBS AG Institutional Investor Group's financial interest in this matter is the largest of any other qualified movant seeking appointment as Lead Plaintiff for the Tax Shelter Actions. For this reason, the UBS AG Institutional Investor Group is presumptively the most adequate lead plaintiff. 15 U.S.C. 78u-4(a)(3)(B)(iii)(bb); *Seidel*, 2009 WL 700782, at *2 (citing *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008)). In addition, the legislative history of the PSLRA suggests a desire that institutional investors be preferred as class representatives. *See* H.R.Rep. No. 104-369 at 34 (Congress "intend[ed] that the lead plaintiff provision will encourage institutional investors to take a more active role in securities class action lawsuits."); *see also In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 (S.D.N.Y. 2007). Given that all three members of the UBS AG Institutional Investor Group are institutional investors, Movants are the preferred choice to serve as Lead Plaintiff.

### C.  Movants Otherwise Satisfy the Requirements of Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that parties may serve as class representatives only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions

of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Of these four prerequisites, only two — typicality and adequacy — directly address the personal characteristics of lead plaintiff movants.  As such, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed.  *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Olsten Corp.*, 3 F. Supp. 2d at 296 ("At this stage in the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.").

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *Olsten Corp.*, 3 F. Supp. 2d at 296.  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 151 (E.D.N.Y. 1996).  Courts of this Circuit have observed that "'[t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.'"  *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y 1995).

Here, the UBS AG Institutional Investor Group clearly satisfies the typicality requirement of Rule 23 because like all other class members, each member of the UBS AG Institutional Investor Group: (1) purchased UBS securities during the Class Period at artificially inflated prices as a result of Defendants' conduct; and (2) suffered damages thereby.  Thus, the UBS AG Institutional Investor Group's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Likewise, under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry of any movants' adequacy to represent the class to the following: (1) the absence of potential conflict between proposed lead plaintiffs and class members and (2) the class representatives' choice of counsel who are qualified, experienced and able to vigorously conduct the proposed litigation. *See Seidel*, 2009 WL 700782, at *3 (citing *Pirelli*, 229 F.R.D. at 412-13).

In this regard, The UBS AG Institutional Investor Group is an adequate representative for the Class. As evidenced by its nearly 5 million dollar loss, the UBS AG Institutional Investor Group's interests in aggressively pursuing claims against UBS are clearly aligned with the interests of the members of the Class, who suffered similar losses because of Defendants' false statements during the Class Period. Additionally, there is no antagonism between Movants' interests and those of the other members of the Class that would prevent adequate Class representation. In fact, each member of the UBS AG Institutional Investor Group has submitted signed certifications as required by §21D(a)(2)(A)(i)-(iv). *See* Guglielmo Decl., Ex. B.

Moreover, as demonstrated below, the UBS AG Institutional Investor Group has selected Scott + Scott to serve as Lead Counsel and to represent the Class because they are highly qualified, experienced, and able to conduct this complex litigation in an efficient and professional manner. *See* Guglielmo Decl., Ex. D. Thus, the UBS AG Institutional Investor Group satisfies the requirements of Rule 23 and all the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should therefore be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### III. MOVANTS' SELECTION OF SCOTT + SCOTT AS COUNSEL FOR THE CLASS SHOULD BE APPROVED

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. Here, the UBS AG Institutional Investor Group, as the presumptive "most adequate plaintiff," has selected Scott + Scott as Lead Counsel.

Scott + Scott is a national law firm with over 20 lawyers in offices in New York, Connecticut, California and Ohio. Scott + Scott's lawyers possess extensive experience prosecuting complex shareholder actions, have successfully prosecuted numerous derivative actions on behalf of injured companies, and have been appointed as lead counsel in landmark shareholder and derivative actions. Scott + Scott possesses the resources necessary to vigorously and adequately represent the interests of the Class. *See* Guglielmo Decl., Ex. D. Scott + Scott is currently serving as lead or co-lead counsel in a number of securities class actions, including the following: *Cornwell, et al. v. Credit Suisse Group, et al.*, No. 08 Civ. 3758 (VM) (S.D.N.Y.); *In re Diebold Sec. Litig.*, No. 05 Civ. 2873 (PCE) (N.D. Ohio); *Pykkonen v. FX Energy, et al.*, No. 07 Civ. 874 (CW) (D. Utah); *In re Guidant Corp. Sec. Litig.*, No 05 Civ. 1658 (SEB) (S.D. Ind.); *Wood v. Ionatron, Inc., et al.*, No. 06 Civ. 0354 (CKJ) (D. Ariz.); *Roth v. Matthews, et al.*, No. 08 Civ. 3183 (RBH) (D.S.C.); and *City of Livonia Employees' Retirement System v Tetra Technologies Inc., et al.*, No 08 Civ. 965 (KPE) (S.D. Tex.).

Within this Court, Scott + Scott has been actively litigating *Carfagno v. Schnitzer*, No. 08 Civ. 912 (S.D.N.Y.), a shareholder derivative action brought on behalf of Centerline Holding Company before Judge Shira A. Scheindlin. In *Carfagno*, Scott + Scott successfully blocked a reverse auction settlement of the company's valuable claims in the Delaware Chancery Court. Despite not having conducted any formal investigation as to the soundness of the underlying conduct, Delaware state court plaintiffs, through their counsel, entered into a proposed settlement agreement that dramatically affected the interests of all Centerline shareholders. Meanwhile, Scott + Scott reviewed tens of thousands of documents produced by the defendants and deposed several key witnesses. Following the investigation, Scott + Scott attorneys, on behalf of Centerline's shareholders, intervened in the Delaware action, objecting to the hastily-reached settlement that offered little benefit to the company and its shareholders. The Delaware Court of Chancery agreed with Scott + Scott and rejected the proposed settlement. The Court of Chancery put a stay on the state court lawsuit pending the outcome of Scott + Scott's federal shareholder derivative action. Scott + Scott continues to prosecute both derivative actions. *See Off v. Ross*, Civil Action No. 3468, 2008 WL 5053448 (Del. Ch. Nov. 26, 2008).

Additionally, Scott + Scott is actively prosecuting fraud and derivative claims in New York State Court on behalf of New York University arising out of the Bernard Madoff fraud and Ponzi scheme. Scott + Scott was the only firm to successfully obtain a temporary restraining

order prohibiting defendants from transferring or liquidating assets of the fund in which New York University had invested.

Scott + Scott possesses a substantial amount of complex litigation experience nationwide, actively prosecuting and litigating complex securities fraud, ERISA, antitrust, and consumer class actions. Some of the significant results achieved in cases where Scott + Scott was appointed lead or co-lead counsel include: *In re Priceline.com Sec. Litig.* (D. Conn.) ($80 million settlement for shareholders); *In re Royal Dutch/Shell ERISA Litigation* (D.N.J.) ($90 million settlement for injured Royal Dutch Shell employees); *In re ImClone Sec. Litig.* (S.D.N.Y.) ($75 million settlement for shareholders); *Thurber v. Mattel, Inc.* (C.D. Cal.) ($122 million settlement in a securities class action involving Mattel, Inc); *In re Emulex Corp. Sec. Litig.* (C.D. Cal.) ($39 million settlement for shareholders); *In re Sprint Sec. Litig.* (D. Kan.) ($50 million settlement for shareholders); *In re Northwestern Corp. Sec. Litig.* (D.S.D.) ($61 million for shareholders); *Schnall v. Annuity and Life Re (Holdings) Ltd.* ($27 million settlement for shareholders); *In re General Motors ERISA Litig.* (E.D. Mich.) ($37.5 settlement on behalf of class of approximately 200,000 General Motors ("GM") workers in GM's Union and Salaried 401(k) Plans); and *In re Scrap Metal Antitrust Litig.* (N.D. Ohio) ($11 million settlement and $34.5 million trial verdict for class members). To date, Scott + Scott has recovered hundred of millions of dollars in settlements and awards for injured shareholders and consumers.

Scott + Scott has a proven track record for excellent cooperation and communication in the prosecution of its complex litigation. Scott + Scott is a firm that was founded by alumni of larger firms, with the goal of providing an environment more conducive to cooperative achievement. To that end, Scott + Scott strongly encourages clients, peers and adversaries alike to communicate openly, often and early in the litigation process so as to avoid any unnecessary waste of time or delay. As demonstrated above, Scott + Scott's seasoned litigation team consisting of attorneys, investigators and forensic accountants have repeatedly demonstrated their willingness to undertake the painstaking process of unraveling corporate fraud, accounting irregularities and improper transactions, and are committed to devoting substantial resources to the prosecution of the Tax Shelter Actions on behalf of UBS investors. Accordingly, the Court should approve the UBS AG Institutional Investor Group's selection of Scott + Scott as Lead Counsel.

## CONCLUSION

For the reasons set forth herein as well as in Movants' accompanying submissions, the UBS AG Institutional Investor Group respectfully requests that the Court: (1) consolidate the related Tax Shelter Actions; (2) appoint the UBS AG Institutional Investor Group as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve its selection of Scott + Scott as Lead Counsel for the Class.

Dated:  March 31, 2009

Respectfully submitted,
SCOTT + SCOTT LLP

/s/ JOSEPH P. GUGLIELMO
JOSEPH P. GUGLIELMO (JG-2447)
29 West 57th Street, 14th Floor
New York, NY  10019
Tel:  (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com

David R. Scott (DS-8053)
P.O. Box 192
108 Norwich Avenue
Colchester, CT  06415
Tel: (860) 537-5537
Fax: (860) 537-4432
drscott@scott-scott.com

Arthur L. Shingler III
Hal D. Cunningham
600 B Street, Suite 1500
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2009, a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION OF BRICKLAYERS AND MASONS' LOCAL UNION NO. 5 OHIO HEALTH AND WELFARE FUND, POLICE & FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT AND WEST PALM BEACH FIREFIGHTERS' PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF SCOTT + SCOTT, LLP AS LEAD COUNSEL was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  The parties may access this filing through the Court's CM/ECF System.

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo (JG-2447)
Scott + Scott, LLP
29 West 57th Street, 14th Floor
New York, NY 10019
Tel: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
